566 So.2d 652 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
John D. COPES, Defendant-Appellant.
No. 21637-KA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Rehearing Denied September 20, 1990.
*653 William J. Guste, Jr., Atty. Gen., Barbara R. Rutledge, Asst. Atty. Gen., Baton Rouge, Henry N. Brown, Jr., Dist. Atty., Bobby L. Stromile, Asst. Dist. Atty., Benton, for plaintiff-appellee.
E. Daniel Burt, Jr., Shreveport, for defendant-appellant.
Before HALL, MARVIN and FRED W. JONES, Jr., JJ.
HALL, Judge:
Defendant, John D. Copes, was convicted of vehicular homicide, LSA-R.S. 14:32.1, by a unanimous jury of six. He was sentenced to five years at hard labor with two of the five years suspended and a fine of $2,000. He appeals his conviction assigning as error that there was insufficient evidence presented by the state to convict him of vehicular homicide and that his sentence is unconstitutionally excessive.

FACTS
On August 4, 1988, at about 8:45-8:50 p.m., a fatal accident occurred on Caplis-Sligo Road in Bossier Parish. Defendant was on his way home in his pickup truck, having had a few beers after work. Defendant did not have his headlights on, but the right front yellow parking light was on. An investigation after the accident showed that the headlights on defendant's vehicle were inoperable.
Traveling about 100 feet in front of defendant's vehicle was a white automobile which had its headlights on. Both defendant and the white vehicle were traveling east in the eastbound lane of traffic. Melvin Johnson, Jr., the victim, was riding a bicycle westward in the eastbound lane, a violation of law. Johnson's bicycle did not have a headlight or a front reflector.
After the white vehicle in front of the defendant passed by the victim, the defendant struck the victim in the center of the eastbound lane with the center of his truck. Defendant stated to officers that he never saw the victim before impact. The victim was killed on impact.
Not long after the accident, a sheriff's deputy happened to drive upon the scene. He radioed the state police so that they could investigate the accident. The state police were notified of the accident about 8:55 p.m. Three state police officers responded to the accident. Two officers investigated the scene of the accident, while one officer questioned Mr. Copes.
Trooper David Staton questioned defendant and learned from him that he had a few beers to drink after work. Later at *654 the police station, defendant was given a field sobriety test of which he passed two parts and failed one. About two hours after the accident, he was given a breath test on the intoxilyzer 5000 machine, which revealed a blood alcohol content of .133 grams percent.
One witness for the prosecution testified he passed defendant and Johnson shortly before the accident. The witness said it was dark and he had his headlights on. Two witnesses for the defense testified they passed by about the same time and that it was not yet dark enough to require headlights.

ASSIGNMENTS OF ERROR
By assignments of error, defendant asserts that there was insufficient evidence to sustain his conviction. Further, he argues that his sentence is excessive.

SUFFICIENCY OF EVIDENCE
The well established standard of review for the sufficiency of the evidence is whether the evidence, viewed in a light most favorable to the prosecution, would lead any rational trier of fact to conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La.1984).
The rule as to circumstantial evidence is that, assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438. However, this statutory rule is not a purely separate test from the Jackson standard to be applied instead of a sufficiency of the evidence test whenever the state relies on circumstantial evidence to prove an element of the crime. State v. Wright, 445 So.2d 1198 (La.1984); State v. Eason, 460 So.2d 1139 (La.App. 2d Cir.1984), writ denied 463 So.2d 1317 (La.1985). Although the circumstantial evidence rule may not establish a stricter standard of review than the more general reasonable juror's reasonable doubt formula, it emphasizes the need for careful observance of the usual standard and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence. State v. Chism, 436 So.2d 464 (La. 1983); State v. Sutton, 436 So.2d 471 (La. 1983). Ultimately, all evidence, both direct and circumstantial, must be sufficient under Jackson to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. State v. Wright, supra; State v. Eason, supra.
The crime of vehicular homicide is defined by LSA-R.S. 14:32.1 as:
"... the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, vessel, or other means of conveyance whether or not the offender had the intent to cause death or great bodily harm whenever any of the following conditions exist:
(1) The offender is under the influence of alcoholic beverages as determined by chemical tests administered under the provisions of R.S. 32:662.
(2) The offender's blood alcohol concentration is 0.10 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
(3) The offender is under the influence of narcotic drugs, central nervous system stimulants, hallucinogenic drugs, methaqualone, or barbiturates and such condition was a contributing factor to the killing."
Defendant relies upon the case of State v. Taylor, 463 So.2d 1274 (La.1985) in support of his contention that the state failed to prove one of the essential elements of the crime. He admits candidly that the state proved that his blood alcohol content was greater than .10, and also that he was operating a motor vehicle. But, he submits that the state failed to show that his intoxication was a cause of the death of the victim.
In State v. Taylor, supra, the defendant raised the issue of the constitutionality of LSA-R.S. 14:32.1. He claimed the statute created an unconstitutional presumption of *655 causation in that the statute created a presumption that traffic fatalities caused by motor vehicle operators with unlawful blood alcohol content were caused by the operators' unlawful blood alcohol concentration. The Louisiana Supreme Court read the statute such that it created no presumption of causation in aid of the prosecution. In this regard, the court stated:
"The evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol. It is not aimed at persons involved in vehicular fatalities whose alcohol consumption does not cause but merely coincides with such an accident. A vehicle operator with unlawful blood alcohol concentration could be involved in many conceivable types of fatal accidents not caused in any way by his blood alcohol concentration. The punishment of persons who without fault and by coincidence fall in this latter case with the severe penalties intended for offenders whose alcohol consumption actually causes highway deaths is unnecessary to the legitimate purpose of the legislation and would constitute unwarranted statutory overkill."
The court held that the statute should be construed to require proof of a causal relationship between an operator's unlawful blood alcohol concentration and the death of a victim in order to convict. Taylor, at p. 1275.
The purpose behind this holding is well founded. This rule is based on the sound principle that the offender's culpable conduct, driving while intoxicated, must be causally linked to the killing. Taylor, at p. 1276.
The prosecution presented Dr. George M. McCormick, II, an expert in forensic pathology, biophysics and toxicology. He stated that defendant's alcohol content would have affected the defendant by impairing his perception (he would not have seen things sharply and would have had decreased peripheral vision), impairing his judgment, and impairing his motor coordination (he could not react as quickly as a person without ethanol in his system). Also, he stated that a person with defendant's alcohol content would not be fit to operate an automobile. The obvious inference that the state wanted drawn from this evidence was that the effects of defendant's blood alcohol concentration caused this accident in that he was driving after dark without headlights and failed to see the victim and react in time.
To rebut this evidence, defendant called Mr. L.D. Steele, an expert in accident reconstruction with limited qualifications. He examined the accident scene, observed photographs of the defendant's vehicle, reviewed reports made by the police officers and examined the bicycle of the victim. It was his opinion, based upon his perception of how the accident must have happened, that the accident was unavoidable by defendant. He concluded that even if the defendant had not been intoxicated, he would not have had sufficient time to avoid the accident.
This conclusion was based on an assumption that defendant was traveling at 45 miles per hour and that the victim entered the lane of travel from defendant's right at a distance of no more than 100 feet away. This assumption is supported by the record in that there was testimony that the defendant was traveling 45 miles an hour, that the victim was riding on the outside edge of the eastbound lane, and that the white automobile was approximately 100 feet in front of the defendant. Steele testified that a normal person presented with this emergency situation would not have been able to react in time to avoid the accident.
To illustrate this point, the expert noted that a vehicle will travel 66 feet per second at 45 miles per hour. Therefore, defendant had no more than 1.5 seconds to react once the victim entered his lane of travel, considering that the victim must have cut into the center of the lane after the white automobile in front of the defendant's vehicle had passed. The expert stated that the average driver, even if not intoxicated, would have had insufficient time in which to react and avoid the accident.
There is no evidence that the defendant was driving erratically. He was in his *656 proper lane of traffic and the accident happened in the center of the lane. The center of defendant's vehicle was the point of impact.
Most damaging to the defendant, however, is that he stated that he did not see the victim until impact. The physical evidence did not indicate that the defendant took any evasive action whatsoever. But, according to Mr. Steele, there would not have been sufficient time to react even if the defendant had seen the victim enter the lane of travel.
Even though Mr. Steele concluded that the defendant's blood alcohol concentration was not a cause of the accident, the jury could have reasonably concluded otherwise. We find that there was sufficient evidence of a causal relationship between defendant's blood alcohol concentration and the victim's death to support the conviction. The evidence showed that the defendant was intoxicated at the time of the accident. Dr. McCormick testified that the defendant's blood alcohol concentration would have impaired defendant's judgment and vision, and slowed his reaction ability. It was reasonable for the jury to infer that defendant's blood alcohol concentration contributed to his lack of judgment in driving after dark without headlights. There was substantial evidence that it was dark at the time of the accident. The prosecution's witness testified to that effect. The white car had its lights on and defendant had turned on what lights his car had. The jury could have concluded beyond a reasonable doubt that defendant's intoxication played a part in his driving without his headlights and failing to see the victim. Thus, defendant's intoxication combined with his operation of his automobile without headlights was a cause of the victim's death. That the victim's own negligence was also a contributing cause of the accident and resulting death is not a defense. The assignments of error relating to sufficiency of the evidence are without merit.

EXCESSIVE SENTENCE
Defendant was sentenced to imprisonment for five years at hard labor with two years of the sentence suspended and a $2,000 fine. We find that the sentence is unconstitutionally excessive and remand for resentencing.
A sentence is a violation of LSA-Const. Art. 1, § 20 (1974) if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). When a sentence shocks the sense of justice, it is unconstitutional. State v. Hogan, 480 So.2d 288 (La.1985). Typically, maximum sentences are reserved for the most serious offender. State v. Telsee, 425 So.2d 1251 (La.1983).
This offense, without doubt, weighed heavily on the trial court because the life of a young man was lost. Yet, we feel after reviewing the numerous mitigating circumstances in defendant's favor that the sentence is out of proportion to this particular defendant's conduct and individual circumstances.
This offense was the defendant's first; he has no prior misdemeanor or felony convictions. His conduct minimally constituted the charged offense. Defendant was not driving erratically or in excess of the posted speed limit. He did, however, show poor judgment in not only driving while intoxicated, but also in driving at or near darkness without headlights.
Defendant's wife is currently suffering with a brain tumor. Defendant apparently had a steady work record and was working as a carpenter to provide for his family at the time of the offense. He has six children. Three of whom, two in high school and one in college, rely upon the defendant for support. The defendant's incarceration would work a grave hardship upon the family.
Also, the victim's conduct was also a partial cause of this accident. He was traveling on the wrong side of the road with neither a headlight or front reflector on his bicycle. He failed to see the defendant's vehicle approaching.
Even though the penalty provisions of vehicular homicide have recently been *657 amended to allow for stricter punishment, the defendant received the maximum sentence of imprisonment imposable at the time he was sentenced, with part suspended. Defendant's conduct did not amount to the worst violation of the statute.
The presentence investigation report indicated that the defendant would respond favorably to a probated sentence and recommended that the trial judge impose a probated sentence.
For all of these reasons, we find that defendant's five-year hard labor sentence is unconstitutionally excessive. We affirm his conviction, but set aside his sentence and remand for resentencing. At resentencing, the trial court may want to reconsider a suspension of sentence, with some jail time as a condition of probation.
CONVICTION AFFIRMED, SENTENCE SET ASIDE, REMANDED.

APPLICATION FOR REHEARING
Before HALL, MARVIN, FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
Rehearing denied.