833 So.2d 1034 (2002)
STATE of Louisiana, Appellee
v.
Richard COOKS, Appellant.
No. 36,613-KA.
Court of Appeal of Louisiana, Second Circuit.
December 4, 2002.
*1037 Carey J. Ellis, III, Rayville, for Appellant.
Richard Ieyoub, Attorney General, William Robert Coenen, Jr., District Attorney, Penny Wise Douciere, Assistant District Attorney, for Appellee.
Before STEWART, KOSTELKA and DREW, JJ.
DREW, J.
Richard Cooks appeals his conviction at jury trial and his seven-year hard labor sentence for the crime of distribution of a schedule II controlled dangerous substance, cocaine, in violation of La. R.S. 40:967(A)(1). Noting error patent in the illegally-lenient sentence, we affirm.

FACTS
The basic facts are not in dispute, with the exception of the most important one: whether or not Mr. Cooks is the person who distributed cocaine to an undercover police officer in the City of Rayville on December 17, 1998, during an undercover drug operation by the Richland Parish Sheriff's Office.
In February 1999, the defendant was charged with distribution of cocaine. Two years later, jury trial was held in March 2001, at which Richland Parish Sheriff's Office Investigator Perry Fleming testified that: *1038  he used Chris Tarver as a confidential informant ("C.I.") for this undercover operation because he had confidence in him since Tarver had previously proven reliable working as a C.I.;
 he paid C.I. $150.00 for his services on December 17;
 he also obtained the help of an undercover officer from an adjoining parish, Billy Womack, to whom he supplied funds for the buy;
 he (Fleming) introduced Womack to the C.I.;
 he attempted to use two types of surveillance equipmentaudio and video;
 unfortunately, the audio portion of his audio equipment malfunctioned;
 however, he was able to listen to the audio of the undercover drug transaction through a surveillance wire worn by Womack;
 his video equipment, concealed in Womack's vehicle, only recorded what transpired outside the residence;
 he had known Richard Cooks for approximately four or five years and was familiar with the gray Cadillac the defendant drove, as well as the gray and purple trailer house in which the defendant lived;
 Womack and the C.I. went to the defendant's residence, located at 604 Scott Street in Rayville, with the C.I. carrying a cold beer;
 the C.I. had not been drinking or using drugs that day;
 Womack stayed in the car while C.I. approached the defendant, requesting $150.00 worth of crack cocaine;
 C.I. went inside the residence with the defendant, who showed C.I. a block of the requested drug;
 C.I. then went outside to get Officer Womack, while the defendant exited the residence and walked to the side of the trailer (allegedly to return some cocaine to a hiding place behind the corner of the trailer, according to C.I.);
 one of the defendant's brothers walked up and C.I. mentioned something about a debt of $20.00;
 C.I., Womack and the defendant entered the residence, where the officer was introduced to a person who identified himself as "Rich";
 Womack told the defendant that he wanted some crack cocaine;
 the defendant said that he had an "eight ball," which is slang for an eighth of an ounce of cocaine;
 Cooks went into a bathroom, and returned with the "eight ball" of crack cocaine,[1] for which Womack gave $150.00 to the defendant, in the presence of C.I.;
 the peace officer and the C.I. then left the premises;
 immediately after the transaction, he received the cocaine from Womack and the C.I., the drugs being later analyzed by the crime lab as .23 grams of crack cocaine; and
 he drove past the same residence about an hour after the drug transaction and saw the defendant still standing outside the residence in approximately the same place he was standing at the beginning of the drug transaction.
*1039 Deputy Fleming made an in-court identification of the defendant as the person he knew as Richard Cooks. The video of the events surrounding the drug transaction was admitted into evidence and played for the jury. Fleming identified in court the persons shown in the surveillance video, including the defendant, the C. I., Andre Cooks (the defendant's brother), Officer Womack, Howard Green, Jr., Terry Kelly and Timothy Cooks. Fleming pointed out the defendant in the video twice, including the portion of the video showing C.I. approaching and talking to Cooks. The deputy identified Richard Cooks in the video as:
 the person in the video who entered and later exited the trailer with C.I.;
 the person who bent over at the corner of the trailer (as if to pick something up) before going back into the trailer with the two undercover operatives, apparently to complete the drug deal; and
 the person he had known for several years, with somewhat singular physical characteristics and body language.
Officer Womack and the C.I. basically corroborated the facts as outlined by Deputy Fleming, with a few disparate recollections.
C.I. testified that:
 he had a criminal history including charges of possession of marijuana with the intent to distribute, burglary charges and some other misdemeanor charges;
 he had known Richard Cooks for about 10 years; and
 the person in court, sitting next to the defense lawyer, was the man who sold cocaine to Officer Womack, as well as the person in the video who went inside and came back out of the trailer with him, and who bent down at the corner of the trailer to put back some cocaine.
Officer Womack also made an in-court identification of the defendant as the same person who sold him the rock of crack cocaine, and as the person in the video who sold him the cocaine. Officer Womack was positive of his identificationhe did not ordinarily do undercover work involving black males and specifically remembered this transaction and this defendant as being the last of only three buys he had ever conducted with black men.
At trial, the defense called several witnesses:
 Sylvia McDonald, the defendant's aunt and a convicted felon, who viewed the video and identified the person who entered and exited the residence as being her brother, Timmy Cooks;
 Sherrie Byrd, who also identified the same person in the video as being her friend, Timothy Cooks, whom she had known for a couple of years;
 Andre Cooks, the defendant's brother, also a felon, who viewed the video and identified the same person as being his uncle, Timothy Cooks;
 Desmond Covington, a local 23-year-old mechanic and a convicted felon, who had known Timothy Cooks since childhood and who also identified Timothy Cooks as the person in the video; and
 Priscilla Obbie, the mother of the defendant's three children, and Mary McDaniels, the defendant's grandmother, who each testified that person in the video as Timothy Cooks.
The jury rendered a 10 to 2 guilty verdict, convicting the defendant as charged. Richard Cooks was sentenced on June 27, 2001, at which proceeding the trial court noted that:

*1040  it had reviewed the defendant's pre-sentence investigative report as well as several letters from the defendant's children and other family members;
 three law enforcement officers and the defendant's probation officer all basically stated that the defendant was well known by local authorities as a drug dealer and should serve jail time;
 the defendant's status was as a first felony offender;
 however, the defendant's extensive criminal record was also discussed, which included a dozen adult misdemeanor convictions from February 1995 through June 2000, at which time he pleaded to possession of marijuana;
 the use by defendant's mother of cocaine and her bad relationship with the defendant;
 the defendant's lack of employment for the last three years;
 the defendant only completed his education through the ninth grade;
 his being the unmarried father of three children; and
 several other factors indicated that imprisonment was appropriate.
The sentenced imposed was seven years imprisonment at hard labor, with credit for time served.

INSUFFICIENT EVIDENCE
The defendant argues that the evidence was insufficient because:
 the state's evidence consisted of the testimony of an undercover officer who did not personally know the defendant, and a C.I. abjectly unworthy of belief;
 although Officer Fleming and other state witnesses identified the defendant on video, this identification was refuted by all defense witnesses who were intimately familiar with the defendant; and
 the video did not depict a sale of cocaine.
The state argues that:
 it proved beyond a reasonable doubt all of the elements of the crime of distribution of cocaine;
 only the identity of the defendant as the seller was disputed;
 the minor discrepancy between the testimony of Officer Womack and C.I. regarding whether the transaction occurred in the doorway to the bedroom or in the bathroom of this small trailer home is insignificant; and
 the jury's credibility determination should not be disturbed on appeal.

Sufficiency of the Evidence
Although this record does not reflect that defendant filed a motion for post-verdict judgment of acquittal pursuant to La. C. Cr. P. art. 821, we will consider sufficiency arguments in the absence of such a motion. State v. Green, 28,994 (La.App.2d Cir.2/26/97), 691 So.2d 1273.
Our law on sufficiency is quite clear. When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the *1041 prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 98-2723 (La.2/5/99), 737 So.2d 747.
This court's authority to review questions of fact in a criminal case is limited to the sufficiency-of-the-evidence evaluation under Jackson v. Virginia, supra, and does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Bosley, supra.
In cases involving a defendant's claim that he was not the person who committed the crime, the Jackson rationale requires the state to negate any reasonable probability of misidentification in order to carry its burden of proof. State v. Powell, 27,959 (La.App.2d Cir.4/12/96), 677 So.2d 1008, writ denied, 96-1807 (La.2/21/97), 688 So.2d 520.
Positive identification by only one witness may be sufficient to support a defendant's conviction. State v. Davis, 27,961 (La.App.2d Cir.4/8/96), 672 So.2d 428, writ denied, 97-0383 (La.10/31/97), 703 So.2d 12; State v. Miller, 561 So.2d 892 (La.App. 2d Cir.), writ denied, 566 So.2d 983 (La.1990).
La. R.S. 40:967A provides in part that it shall be unlawful for any person knowingly or intentionally:
(1) To produce, manufacture, distribute, or dispense or possess with intent to produce, manufacture, distribute, or dispense, a controlled dangerous substance or controlled substance analogue classified in Schedule II;
(2) To create, distribute, or possess with intent to distribute, a counterfeit controlled dangerous substance classified in Schedule II.
Cocaine is a Schedule II controlled dangerous substance. La. R.S. 40:964, Schedule II(A)(4).
This record reveals that a rational trier of fact, viewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could have reasonably concluded that all of the elements of the offense of distribution of cocaine were proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La. App.2d Cir.4/2/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The testimony of the undercover officer and the C.I., taken together, provided direct evidence of:
 where, when and how the cocaine sale occurred; and
 the defendant's identity as the person who sold the cocaine to the undercover *1042 officer in the presence of the C.I.
Laboratory results introduced into evidence proved that the substance involved in the drug sale was in fact cocaine. The testimony of the undercover officer and the C.I. regarding the events surrounding the cocaine sale was further corroborated by the video surveillance tape. Additionally, the testimony of the investigating officer who listened to the audio of the transaction via the audio surveillance wire worn by the undercover officer further corroborated what transpired during the cocaine sale, particularly including the seller's identification of himself as "Rich." Even though the defendant claims that he was not the person who committed the crime, the state met its burden of proof by negating any reasonable probability of misidentification under the Jackson standard. See State v. Powell, supra.
This record shows positive identification of the defendant by two eyewitnesses, one of whom (Womack, the undercover officer) was never seriously impeached. Although the defendant utilized the testimony of other witnesses to dispute his identification, this court's authority to review questions of fact in a criminal case does not extend to credibility determinations made by the trier of fact. See La. Const. art. 5, § 10(B); State v. Williams, supra. The jury's decision to accept or reject the testimony of a witness in whole or in part will be accorded great deference. State v. Bosley, supra. This assignment lacks merit.

Inadmissible Evidence of Other Crimes
On the last day of trial, the defendant called Desmond Covington, who testified that, based on his observation of the video, he was "100 percent positive" that the person in the videotape was Timmy Cooks, not the defendant. During cross-examination by the state, the jury was removed from the courtroom at the state's request for the exploration of other crimes evidence, to which defense counsel objected. The hearing was held outside the presence of the jury, after which the trial court ruled that the witness could be questioned regarding his knowledge of where the defendant kept his illegal drugs. The defendant's motion for a mistrial was denied.
During cross-examination before the jury, the state asked Covington, "Do you know where Richard Cooks kept his drugs at 604 Scott Street?" The trial court then overruled defense counsel's objection, after which the witness replied that he didn't know. The state then asked Covington, "Did you ever tell a law enforcement officer that he told you that?" Covington answered, "Yes, when we were arguing." Covington explained that the officer was trying to get him to set the defendant up. He asserted that he was lying when he told the officer that he knew where the defendant kept his drugs. Covington denied ever telling Officer Alexander that the defendant hid his dope around by the corner of the trailer at 604 Scott Street. However, Covington later admitted making the accusation/threat to the defendant during an argument, in the presence of the officer. The state asked Covington if he ever told law enforcement officers that he would like to work as a C.I. against the defendant. Again, the defense objection was overruled. Covington said that he only gave police information because they threatened to lock him up. Covington testified on re-direct that the officers asked him to "set up" the defendant by planting illegal drugs at the back of the defendant's house. On re-cross-examination, Covington described his two meetings with the officers about possibly planting dope on the defendant.
On rebuttal, the state called Officer Alexander, who testified:

*1043  about six to eight months ago, he was trying to settle an argument between Covington and the defendant, when Covington told the defendant, in front of Alexander, not to "mess with" him or he would tell them where he hid his dope (to which the defense entered a timely objection, which was overruled);
 about a year and a half ago, Covington contacted him and wanted to be an informant, at which time Covington told him that the defendant kept his dope out by the corner of the trailer by the dog pen; and
 he never threatened Covington and never asked Covington to be an informant.
On this point, the defendant argues that:
 this other crimes evidence elicited from Covington over defense counsel's objection was highly unreliable, with low probative value and high prejudicial effect;
 no such acts were proved to have been committed by the defendant;
 this evidence was a subterfuge for depicting him as a drug dealer and did not serve the actual purpose for which it was offered; and
 the trial court erred in failing to grant his motion for a mistrial on these grounds.
The state responds that:
 most of the alleged other crimes testimony was not heard by the jury;
 the testimony was not inadmissible other crimes evidence;
 the testimony was elicited as the direct result of the defense "opening the door" by calling this witness to the stand; and if the evidence was inadmissible other crimes evidence, then the error was harmless.

Discussion
Mistrial, a drastic remedy, is warranted only when substantial prejudice would otherwise result to the accused. State v. Edwards, 420 So.2d 663 (La.1982); State v. Jackson, 629 So.2d 1374 (La.App. 2d Cir.1993), writ denied, 94-0201 (La.5/6/94), 637 So.2d 1046; State v. Harris, 28,517 (La.App. 2 Cir. 8/21/96), 679 So.2d 549, writ denied, 96-2954 (La.9/26/97), 701 So.2d 975. A mistrial is mandatory when a judge, district attorney or court official refers to inadmissible other crimes evidence in the presence of the jury. La. C. Cr. P. art. 770.[2]
Generally, evidence of other acts of misconduct is not admissible because it creates the risk that the defendant will be convicted of the present offense simply because the unrelated evidence establishes him or her as a "bad person." La. C.E. art. 404(B)(1); State v. Jackson, 625 So.2d 146, 148 (La.1993). This rule of exclusion stems from the "substantial risk of grave prejudice to the defendant" from the introduction of evidence regarding his unrelated criminal acts. State v. Prieur, 277 So.2d 126, 128 (La.1973). However, *1044 evidence of other crimes may be admissible if the state establishes an independent and relevant reason, i.e., to show motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding. La. C.E. art. 404(B)(1). Even when the other crimes evidence is offered for a purpose allowed under Article 404, the evidence is not admissible unless it tends to prove a material fact at issue or to rebut a defense. The probative value of the extraneous crimes evidence must outweigh its prejudicial effect. La. C.E. art. 403; State v. Jacobs, XXXX-XXXX (La.5/15/01), 803 So.2d 933, U.S. cert. denied; State v. Hatcher, 372 So.2d 1024, 1033 (La.1979).
We find that this other crimes evidence was admissible to assist in proving a material fact truly at issue in the case. See State v. Frederick, 340 So.2d 1353, 1356 (La.1976). The evidence was highly probative in rebutting the primary defense of misidentification of defendant as the offender. See State v. Jacobs, supra.
Identity was the key issue. Evidence of Covington's previous statements to officers that he knew where the defendant hid his illegal drugs (at the corner of the trailer), and that he wanted to act as a C.I. against the defendant, were clearly relevant to the issue of the identity of the seller because it bolstered the state's direct and circumstantial evidence of the defendant's identity as the seller, and as the person who either picked up or put away some cocaine at the corner of the trailer in the video. Covington's testimony, inconsistent as it may have been, had the clear potential to help jurors evaluate the credibility of both state and defense witnesses regarding the identity of the person in the video as the defendant. His testimony, if believed, also could have discredited two of the law officers involved in this prosecution. In actuality, the witness denied knowing where the defendant kept his stash. The trial court did not err in ruling that the evidence was admissible under La. C.E. arts. 403 and 404.
We further find that the state proved defendant's connection with the earlier crime by clear and convincing evidence.[3] Based on the totality of the evidence, there was no substantial likelihood of misidentification. The defendant's identity was proved by the testimony of Officer Alexander, who was present when Covington angrily threatened the defendant.
In any event, the erroneous introduction of other crimes evidence is subject to harmless error analysis. State v. Johnson, 94-1379 (La.11/27/95), 664 So.2d 94; State v. Barnes, 28,835 (La. App.2d Cir.12/11/96), 685 So.2d 1148, writ denied, 97-0274 (La.10/10/97), 703 So.2d 602. The appropriate inquiry is whether the verdict actually rendered was surely unattributable to any alleged error. Based upon the direct evidence (testimony of the undercover officer and the C.I. regarding the defendant's identity as the seller), the verdict rendered was surely unattributable to any alleged error caused by the admission of this confusing and contradictory testimony.
*1045 A trial court's ruling on the admissibility of evidence of other crimes will not be overturned absent an abuse of discretion. State v. Scales, 93-2003 (La.5/22/95), 655 So.2d 1326, U.S. cert. denied. This argument is without merit.

Incorrect Jury Instruction
After the charge conference, the defense requested this limiting instruction concerning other crimes evidence:

Proof of Other Offenses
Remember, the accused is on trial only for the offense charged. You may not find him guilty of this offense because he may have been involved in any other offense. This evidence may be considered only for the limited purpose of attacking the credibility of a witness, and not in determining the guilt or innocence of the defendant.
The court ruled that it would charge the jury with the standard charge as to other crimes evidence, adding these words to the proffered charge: "... or for proving system or identity." The defense then asked the court to omit the charge, which request was denied by the court, to which defendant's objection was noted.
The defense notes that the jury vote to convict was 10 to 2, and the jury made three requests during deliberation. Under these circumstances and following Prieur, supra, the defense argues that it should have had the final word regarding this limiting instruction.
La. C. CR. P. art. 807 provides:
The state and the defendant shall have the right before argument to submit to the court special written charges for the jury. Such charges may be received by the court in its discretion after argument has begun. The party submitting the charges shall furnish a copy of the charges to the other party when the charges are submitted to the court.
A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge to be given.
The court in State v. Nelson, 354 So.2d 546 (La.1978), found that the trial court in a murder prosecution did not err in denying special charges requested by the defendant where such charges were either covered by a general charge or were not wholly correct and pertinent. La. C. CR. P. art. 807. Also see State v. Nuccio, 454 So.2d 93 (La.1984).
La. C.E. art. 404(B) provides in pertinent part:
Other crimes, wrongs, or acts. (1) Except as provided in Article 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
The state correctly argues that the defense's proposed jury charge did not conform to the requirements of La. C. CR. P. art. 807 because it was not wholly correct. The defense's proposed jury charge stated that evidence of other crimes "may only be considered only for the limited purpose of attacking the credibility of a witness...." Clearly, under La. C.E. art. *1046 404(B), evidence of other crimes, wrongs, or acts may be admissible for many other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. Thus, the trial court did not err in refusing to give the proposed jury charge. See State v. Nuccio, supra. Furthermore, the special charge requested by the defendant was covered by a general charge. See State v. Nelson, supra. This argument is meritless.

Excessive Sentence
A timely-filed motion to reconsider sentence was denied by the trial court without a hearing. The defense asserts that the seven-year sentence is harsh under these circumstances, and that the goals of punishment and rehabilitation can be better served with a less severe sentence. The state argues that the facts and circumstances of this case and the criminal and social history of the defendant amply justify a seven-year sentence.
The sentence of seven years at hard labor with credit for time served was less than one-fourth the maximum. This crime was committed on December 17, 1998, at which time the penalty in La. R.S. 40:967(A) for distribution of cocaine was a 5- to 30-year hard labor sentence, with the first five years being without benefit of parole, probation, or suspension of sentence, and a potential fine of not more than fifty thousand dollars. This instant sentence is just two years greater than the minimum sentence.
Our law on excessive sentences is also clear. The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La. C. Cr. P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.), writ denied, 521 So.2d 1143 (La.1988).
There is no requirement that specific matters be given any particular weight at sentencing. State v. Jones, 33,111 (La.App.2d Cir.3/1/00), 754 So.2d 392, 394, writ denied, XXXX-XXXX (La.2/2/01), 783 So.2d 385; State v. Callahan, 29,351 (La.App.2d Cir.2/26/97), 690 So.2d 864, writ denied, 97-0705 (La.9/26/97), 701 So.2d 979. In selecting a proper sentence, a trial judge is not limited to considering only a defendant's prior convictions but may properly review all prior criminal activity. State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless *1047 infliction of pain and suffering. State v. Dorthey, 623 So.2d 1276 (La.1993); State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
The trial court was aware of the pertinent matters prior to imposing sentence, i.e., the defendant's first felony offender status, his reputation with the local law enforcement community as a drug dealer, his extensive criminal misdemeanor record, his social history and letters from family members requesting leniency. Thus, the record clearly shows an adequate factual basis for the sentence imposed in compliance with La. C. Cr. P. art. 894.1.
On this record, it cannot be said that the trial court imposed an excessive sentence. When the crime of distribution of cocaine and the defendant's punishment are viewed in light of the harm done to society by illegal drugs, the defendant's sentence does not shock the sense of justice. State v. Hogan, supra; State v. Bradford, supra.

ERROR PATENT
The defendant's sentence is illegally lenient because the trial court failed to impose the first five years without benefit of parole, probation, or suspension of sentence. However, when a district court fails to order service of sentence without benefits in a case in which a determinate time period to be served is mandated by the statute of conviction, the sentence automatically will be served without benefits for the required time period. La. R.S. 15:301.1(A); State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790, 799.

DECREE
The defendant's conviction and sentence are AFFIRMED.
NOTES
[1] Officer Womack testified that the defendant went into the bathroom and came out of the bathroom with the cocaine. Officer Womack said the transaction occurred in the doorway to the bedroom. C.I. testified that he stepped out of the way, stood inside the doorway and watched while the defendant and Officer Womack stepped into the bathroom to make the transaction there.
[2] In State v. Guillot, 277 So.2d 146 (La.1973), the court analyzed a similar question by the assistant district attorney and determined that it referred directly or indirectly to another crime alleged to have been committed by the defendant. The assistant district attorney asked a defense witness on cross-examination, "Do you know whether or not ... or rather, don't you know that he was involved in an accident when he was drunk about three or four weeks ago?" The court noted that the question was not purely interrogative and included an assertion by the assistant district attorney that the defendant, while drunk, had been involved in an automobile accident about three weeks before the trial. The court further noted that there can be no dispute that driving while intoxicated is a crime in Louisiana.
[3] The standard for determining a defendant's connexity with the other prior crimes, i.e., by a preponderance of the evidence or by clear and convincing evidence, for purposes of determining admissibility of other crimes evidence, remains an open question in the Louisiana Supreme Court. See La.Code Evid. art. 1104. See State v. Jacobs, supra, at footnote 15.