946 So.2d 277 (2006)
STATE of Louisiana, Appellee
v.
William Alexander GOURDINE, Appellant.
Nos. 41,469-KW, 41,431-KA.
Court of Appeal of Louisiana, Second Circuit.
December 13, 2006.
*279 E. Ray Kethley, Jr., Shreveport, LA, for Appellant.
Paul Joseph Carmouche, District Attorney, Tommy Jan Johnson, Edward M. Brossette, Assistant District Attorneys, for Appellee.
Before BROWN, DREW and MOORE, JJ.
DREW, J.
We have before us a criminal appeal filed by the defendant and a writ for supervisory review filed by the state. William Alexander Gourdine was convicted of *280 vehicular homicide after voluntarily waiving his right to a jury trial. The trial court sentenced Gourdine to eight years at hard labor, suspending seven years of the sentence, and ordering that one year be served without benefit of parole, probation, or suspension of sentence.
We affirm defendant's conviction but vacate the sentence and remand the matter for resentencing, with instructions. We direct the trial court to order and closely examine[1] a thorough and detailed presentence investigation report, before resentencing the defendant.

FACTS
On the afternoon of April 3, 2004, 17-year-old Amanda Laurenson was driving a white Acura RSX, two-door coupe, heading south on Blom Boulevard. She stopped at a stop sign at the intersection of Blom Boulevard and Crabapple Drive in a residential area of Shreveport. As she crossed the center line of the intersection, she was broadsided by the defendant, who was speeding west on Crabapple, well over the speed limit, driving a gray Acura MDX, an SUV. His SUV violently crushed the driver's side of her coupe. The actual point of impact was partially in the eastbound lane of Crabapple, meaning that the young lady was close to clearing the intersection. The devastating impact killed Laurenson instantly.
Anthony Paul Nabors testified that:
 he was driving east on Crabapple towards the intersection at Blom when he witnessed the accident;
 he saw the white car stop at the intersection before proceeding across Crabapple at a normal rate of speed;
 the intersection was clear when the white car accelerated across Crabapple, but the gray SUV quickly came around the corner and appeared to have suddenly come "out of nowhere;"
 he did not see the gray SUV until it struck the white car in the eastbound lane, spinning it two to three times and sending it into the air;
 the gray SUV continued forward, veering into a front yard until it hit a tree;
 the speed limit for the area was 35 mph;
 it was a winding road;
 it was a school zone;
 it was in a busy residential neighborhood;
 the distance from the curve to the intersection was approximately 75 yards; and
 the only obstruction was a tall pile of debris, approximately eight feet high at the northeast corner of the intersection.
Richard Smith testified that:
 he was visiting family that lived near the intersection of Blom and Crabapple;
 he saw from the backyard the gray SUV traveling at a high rate of speed and estimated it was traveling approximately 75-80 mph;
 he turned to say something to his brother-in-law about how fast the vehicle was traveling in this residential neighborhood when he heard the crash; and
 it sounded as though the gray SUV actually accelerated before the crash.
Leland McNabb and Bryon Mangum, registered paramedics with the Shreveport *281 Fire Department, testified that Laurenson had no pulse, was not breathing, and had a large amount of blood coming from her mouth and ears when they assessed her. She was found wearing her seatbelt when McNabb and a bystander removed her from her vehicle, through the passenger door, as the driver's door was inoperable.
McNabb and Mangum testified that Laurenson appeared to have died instantly. The Shreveport Fire Department transported Laurenson to LSU Medical Center, but efforts to resuscitate her were unsuccessful. The state and defense stipulated that Vicki Grant of the Caddo Parish Coroner's Office would have testified that an autopsy performed on Laurenson showed that she died from massive trauma, especially head injuries, and that she tested negative for alcohol or drugs.
Defendant was also taken to LSU Medical Center for treatment. Because the accident caused a fatality, because the defendant smelled of alcohol, and because the defendant appeared to be under the influence of alcohol, Shreveport police officers directed a registered nurse to draw blood from defendant. The sample was taken to the North Louisiana Crime Lab, and it showed Gourdine's blood alcohol concentration (BAC) to be 0.13 percent, well over the legal limit of 0.08 percent. Defendant told Shreveport Police Officer Troy Flores that he was traveling west on Crabapple when a white car pulled out in front of him and that he was unable to stop.
Denise Laurenson, the victim's mother, testified that she was talking to her daughter on her cell phone at the time of the accident. Ms. Laurenson testified that her daughter was telling her that she was on her way to her boyfriend's house when she suddenly stopped talking and she heard a noise on the phone. Ms. Laurenson testified that she tried to call her back several times and thought there was something wrong with the phone. Shortly thereafter, Ms. Laurenson drove her car past the scene of the accident and recognized her daughter's car. Ms. Laurenson then drove to LSU Medical Center, where she learned of her daughter's death.
Shreveport police officers took measurements of the accident site and impounded both vehicles. Officer Flores testified that the debris pile at the intersection was approximately four feet high. Corporal William Vincent with the Shreveport Police Crash Investigation Unit testified that the collision occurred just left of the double yellow line in the lane opposing the defendant's lane of traffic, and that the victim's car had almost cleared the defendant's lane of traffic when the collision occurred. Corporal Vincent testified that it was normal for a driver to veer to the left if a threat was coming from the right. Corporal Vincent testified that the impact caused the victim's car to rotate approximately three times, over a curb and two road signs, while defendant's car continued onward until it knocked over a mailbox and hit a tree.
Based upon the distance from the point of impact to the place where both cars came to a rest, Corporal Vincent estimated that defendant's pre-impact speed was 65-70 mph, and that his post-impact speed was 46-50 mph. Corporal Vincent estimated that the victim's pre-impact speed was 15-20 mph and that her post-impact speed was 40-45 mph. Corporal Vincent testified that interviews with witnesses confirmed his speed calculations. Corporal Vincent also testified that speed was a factor in the accident and that it was his opinion that Gourdine would have been able to stop before the accident if he had been driving the speed limit of 35 mph. Corporal Vincent also testified that speed was a factor in the accident because of the horrific damage to the victim's car.
*282 Kevin Batts, an expert in accident reconstruction, testified that he estimated Gourdine's pre-impact speed to be 70-75 mph and that he estimated the victim's pre-impact speed to be 15-20 mph. Batts testified that there was some evidence that defendant applied his brakes and veered to the left shortly before impact. Batts testified that if a driver is traveling at 35 mph, it will take approximately 135 feet to come to a complete stop. Batts also testified that the faster a vehicle is traveling, the more distance is needed to stop. Batts testified that the distance from the middle of the curve before the intersection, up to the point of impact was approximately 680 feet.
Jimmy Barnhill, the director of the North Louisiana Crime Lab and a forensic toxicologist, testified as an expert on the effects of alcohol on the human body. Barnhill testified that studies have shown that a person with a blood alcohol concentration of 0.08 percent is sufficiently impaired so that they cannot safely operate a motor vehicle. Barnhill testified that blood alcohol concentration decreases from the time at which a person stops consuming alcohol, but that blood alcohol concentration at the time of the accident can be estimated. Because Gourdine's blood alcohol concentration was 0.13 percent at the time he was tested, an hour and a half after the accident, Barnhill estimated that Gourdine's blood alcohol concentration at the time of the accident was between 0.15 to 0.168 percent, approximately twice the legal limit of 0.08 percent.
Barnhill testified that:
 once a person's blood alcohol concentration level is 0.05 percent and higher, that individual begins to experience vision problems such as double vision, loss of peripheral vision, the dazzling effect of lights at night, and sudden blindness from bright lights due to dilated pupils;
 people also experience a decrease in reaction time, reduced inhibitions, impaired judgment and decision-making, and impaired perception of distances;
 a person with a blood alcohol concentration between 0.13 and 0.16, driving between 45 and 70 mph in a residential neighborhood presents a very dangerous situation;
 a person driving with this blood alcohol concentration would be dangerous even when driving at the speed limit because of the physical and mental impairments caused by alcohol, but the danger would be increased by speeding; and
 he believed that Gourdine's blood alcohol concentration was a factor in this accident.
Gourdine presented the testimony of Richard Fox, an expert in accident reconstruction, who testified that:
 Gourdine was traveling at approximately 48 mph at the time of impact, and between 43-53 mph before taking evasive action;
 using crush analysis, the victim's car would have been split into two pieces if he had been traveling 70 mph at the point of impact;
 based upon his speed calculations for Gourdine, the normal reaction time to respond to an obstacle is 1.6 to 1.9 seconds, but that Gourdine took evasive action within 1.1 seconds;
 he believed the accident was caused by the debris pile that may have blocked the victim's view of Crabapple, by the victim talking on her cell phone at the time of the accident, and by the victim pulling out in front of Gourdine; and

*283  he did not think Gourdine's blood alcohol concentration caused the accident; however, he declined to state that Gourdine's blood alcohol concentration had nothing to do with the accident.
At the close of the bench trial, the trial court found Gourdine guilty of vehicular manslaughter.

DISCUSSION
Causation
The defendant's argument is that:
 the state failed to present sufficient evidence to prove that his blood alcohol concentration was a proximate or direct cause of Amanda Laurenson's death;
 the state failed to prove that his alcohol consumption and speeding caused the victim's death because she was talking on her cell phone and distracted when she pulled out in front of his vehicle;
 the victim was the sole cause of the accident;
 Gourdine's blood alcohol concentration did not cause him to speed;
 the state did not prove that driving slower would have avoided the accident or increased the victim's chance of survival;
 the state's experts did not use crush analysis in estimating his speed;
 there was no evidence of alcohol consumption playing any role in the accident; and
 the "but for" standard of causation was not the appropriate standard.
The state argues that:
 sufficient evidence of causation was presented;
 evidence was presented that the defendant was not within sight when the victim attempted to cross Crabapple;
 defendant's high rate of speed while traveling around the curve before the intersection caused the collision to occur before the victim could clear the intersection;
 defendant's speeding in a residential neighborhood was due to his blood alcohol concentration impairing his judgment.
The law on sufficiency is well settled.[2]
*284 To be found guilty of vehicular homicide, the state must prove that the defendant operated a motor vehicle while his blood alcohol concentration was 0.08 percent or more and that there was a causal connection between the impaired driving and the death of the victim. State v. Bradford, 29,654 (La.App.2d Cir.09/24/97), 700 So.2d 1046, 1048 (citing La. R.S. 14:32.1; State v. Taylor, 463 So.2d 1274 (La.1985)). "The evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol. It is not aimed at persons involved in vehicular fatalities whose alcohol consumption does not cause but merely coincides with such an accident." State v. Copes, 566 So.2d 652 (La.App. 2d Cir.1990).
On this cold record, we do not assess any blame for this accident on the victim. This accident was caused 100% by the impaired operator, his excessive speed, and his blunted instincts (occasioned by his excessive alcohol usage).
The trial court indicated that this accident was a comparative situation. We disagree, but even accepting this finding, arguendo, the trial court was correct in finding Gourdine guilty as charged.
This court stated in State v. Baker, 31,162 (La.App. 2d Cir.10/28/98), 720 So.2d 767, 772-773, writ denied, XXXX-XXXX (La.04/23/99), 742 So.2d 880, that the defendant's intoxicated driving need not be the only cause contributing to the death of the victim:
In State v. Matthews, 450 So.2d 644 (La.1984), the Louisiana Supreme Court held that it is not essential that the state prove that the defendant's action was the sole cause of death; it is sufficient if the defendant's conduct hastened the termination of life, or contributed, mediately or immediately, to the death, in a degree sufficient to be a clearly contributing cause. Subsequent cases by the Louisiana Supreme Court have used the "substantial factor" standard, and subsequent cases by this court have used both standards. These standards are used interchangeably, and therefore, the basic determination is whether the defendant's act was a proximate cause of the victim's death.
In State v. Kalathakis, 563 So.2d 228 (La.1990), and State v. Martin, 539 So.2d 1235 (La.1989), the Supreme Court used the "substantial factor" standard and cited State v. Matthews, supra. In State v. Martin, supra, the court stated that proof that the defendant's conduct was a proximate cause of death is sufficient to satisfy causality requirements.
In State v. Beason, 26,725 (La.App.2d Cir.4/7/95), 653 So.2d 1274, this court stated that the defendant's conduct need not be the sole proximate cause of the victim's death; it is sufficient for the defendant's acts to be a contributing cause or a substantial factor. In State v. Mosely, 475 So.2d 76 (La.App. 2d Cir.1985), this court mentioned both standards from State v. Matthews, supra, in finding that the beating inflicted upon an eighteen-month-old child was the cause of death of the child rather than the alleged inadequate medical care. The court noted that a conviction will be upheld in some instances even if the medical assistance later rendered to the victim is inadequate. State v. Mosely, supra.. . . .

*285 Although the trial court's charge to the jury failed to mention the "substantial factor" language along with the "contributing cause" language, this omission does not prejudice the defendant. The standards are used interchangeably. The question for the judge or jury was whether the defendant's act was a proximate cause of the victim's death. Therefore, both of the above standards provide an adequate definition of proximate cause.
Further, this court has previously stated in State v. Copes, supra, that when the defendant's intoxicated operation of a motor vehicle is a cause of the victim's death, the fact that "the victim's own negligence was also a contributing cause of the accident and resulting death is not a defense."
In the present case, the evidence, viewed in a light most favorable to the state, was sufficient to convict Gourdine of vehicular homicide. The evidence of his guilt is overwhelming. In making its findings of fact, the trial court found that the state proved beyond a reasonable doubt that defendant was driving a motor vehicle on a roadway in Caddo Parish, Louisiana, and that defendant's blood alcohol concentration exceeded the legal limit of 0.08 percent. In regard to causation, the trial court stated the following:
The only question, then, for the defendant to be found guilty the State must prove beyond a reasonable doubt that there was causation. Now, the Court has reviewed the totality of the testimony as well as the exhibits which have been received into evidence. This Court believes that the victim while using her cell telephone was distracted and failed to yield the right-of-way; and in doing so, she drove into an intersection where the favored oncoming traffic should have been respected. Whether or not the victim's view of the west-bound traffic was obstructed by any debris that was on the side of the road, I recognize it's possible, but from the evidence it's not clear enough for this Court to consider that as a factor.
However, this Court believes that the State has proved beyond a reasonable doubt that the defendant exceeded the posted speed limits and I will say substantially. And substantially in this Court's opinion is anything above 10 miles per hour, and that the collision by the excessive speed caused the killing of the victim. Now, whether the Court is applying the principles correctly or not, this Court takes a literal reading of the statute, that the State must prove that the defendant's unlawful blood alcohol concentration combined with his operation of the vehicle caused the death.
This Court concludes that the defendant's unlawful blood alcohol concentration along with his operating of the motor vehicle with such excessive speed caused the death of the victim. The Court has no problem in finding that the defendant's speeding was the result of his impairment based upon his alcohol blood concentration. Speed did not cause the accident, it was the defendant's actions of operating the motor vehicle in an excessively fast manner which caused the death, because had he not been using alcohol and driving so fast, notwithstanding there being an accident, this Court does not believe that the victim would have died.
. . . .
Based upon the totality of the evidence the Court finds that the State has proven all three elements beyond a reasonable doubt, and the Court will find the defendant guilty as charged.
According to this court's previous holding in State v. Copes, supra, defendant's intoxicated state while operating a motor *286 vehicle may still be a proximate cause of the victim's death even though the trial court found that the victim was distracted by her cell phone and that the victim drove into the intersection where she did not have the right of way. Given the testimony regarding the massive injuries that caused Laurenson's instantaneous death, the state presented evidence from which a reasonable factfinder could determine that defendant's substantial speeding, impairment, and delayed reaction time were the proximate cause of victim's death in this side-impact collision. The state presented evidence from which a reasonable factfinder could determine that defendant's judgment was impaired by his high blood alcohol concentration and that this caused him to drive at a high rate of speed along a winding road in a busy, residential neighborhood.
Further, the state presented evidence from which a reasonable factfinder could have determined that the intersection was clear at the time the victim initially accelerated from the stop sign. Through the testimony of the state's accident reconstruction expert regarding the distance between the curve before the intersection and the distance needed to stop when traveling at the posted speed limit of 35 mph, the state presented evidence from which a reasonable factfinder could have determined that Laurenson would have been able to clear the intersection or that defendant could have stopped and avoided the accident, had he not been speeding. Accordingly, the state presented sufficient evidence from which a reasonable factfinder could determine that Gourdine's intoxicated operation of a motor vehicle caused the death of Amanda Laurenson. This assignment is therefore without merit.
Sentencing
The trial court sentenced the defendant to serve eight years at hard labor, with seven years suspended, subject to three years' active supervised probation. The one year of actual prison time was to be served without benefit of probation, parole, or suspension of sentence.
The state applied for a writ of supervisory review, wherein it argued that the trial court abused its vast discretion by failing to consider defendant's prior criminal history, by misapplying the sentencing guidelines of La. C. Cr. P. art. 894.1, and by refusing to order a presentence investigation. We find merit in the state's unusual request, and we vacate this facially lenient, though legal, sentence. We remand, with instructions, for resentencing, based on these findings:
1. Presentence Investigation and Complete Criminal History
Both the state and the defendant requested that the court order a presentence investigation. The trial court declined to do so. We recognize that there is no right to have a presentence investigation report, absent an abuse of the trial court's discretion. State v. Bell, 377 So.2d 275 (La.1979). This is, however, just such a case.
The defendant's prior criminal history of substance abuserelated crimes would appear to be extremely relevant in crafting a just sentence in this tragic matter.
Nonetheless, the learned trial court refused to consider a prior arrest for driving while intoxicated in Hahnville, Louisiana, which did not lead to a conviction. In selecting a proper sentence for a criminal defendant, a trial judge is not limited to considering only prior convictions and may review all evidence of prior criminal activity. State v. Cooks, 36,613 (La.App.2d Cir.12/04/02), 833 So.2d 1034.
In addition, and despite a certified copy of defendant's driving record from the *287 North Carolina Department of Transportation, reflecting a prior conviction for driving while intoxicated, the trial court refused to consider this conviction because the original North Carolina records had been administratively destroyed.
Despite the DWI arrest in Hahnville and the DWI conviction in North Carolina, the trial court concluded that the defendant had no prior criminal activity. This factual conclusion appears to be grievously incorrect and an abuse of discretion.
When evaluating a defendant's criminal history, trial courts may consider evidence at sentencing that would otherwise be inadmissible at trial. State v. Myles, 94-0217 (La.06/03/94), 638 So.2d 218; State v. Jackson, 612 So.2d 993 (La.App. 2d Cir.1993). For example, the trial court may consider records of prior arrests, hearsay evidence of suspected criminal activity, conviction records, and evidence of uncharged offenses or offenses that were nolle prossed. State v. Emerson, 31,408 (La.App.2d Cir.12/09/98), 722 So.2d 373; State v. Myles, supra.
Pursuant to a motion for reconsideration, the trial court corrected its omission of the required fines and court costs that defendant was to pay as part of his sentence; however, it refused to otherwise modify the sentence.
As a general rule, the trial court has wide discretion to sentence within the statutory limits. State v. Randle, 31,070 (La.App.2d Cir.09/23/98), 719 So.2d 169; State v. Matthews, 26,550 (La.App.2d Cir.12/21/94), 649 So.2d 1022, writ denied, 95-0435 (La.06/16/95), 655 So.2d 341. Sentences are reviewed for "manifest abuse of discretion" because it is presumed that the trial court is in the best position "to observe the defendant, evaluate the circumstances of the crime and judge its impact on the community." State v. Jackson, supra. The Louisiana Sentencing Guidelines, as codified in La. C. Cr. P. art. 894.1, are advisory, and the trial court has the discretion to reject them and impose any sentence within the statutory range of the crime for which the defendant was convicted that is not constitutionally excessive. State v. Matthews, supra.
The sentencing transcript reflects a paucity of information about the defendant's past. A presentence investigation will clear up the defendant's criminal history and provide the trial court a clearer factual basis by which to render a just and appropriate sentence.[3]
2. Misapplication of La. C. Cr. P. Article 894.1(B)(5)
The state also argued that the trial court misapplied Article 894.1(B)(5) by not finding that Gourdine's drunk driving at a high rate of speed in a residential neighborhood created a risk to more than one person. We agree.
Though we recognize that sentencing is the province of the trial court, we find that this extremely lenient sentence, though legal, *288 was imposed without the court considering all the facts available to it. We further discern from the sentencing and resentencing record that the trial court incorrectly concluded that it could not consider certain material relative to the defendant's prior criminal history.
When reviewing the sentence imposed by the trial court, the appellate court does not determine whether another sentence would have been more appropriate or substitute its judgment for that of the trial court; rather, the appellate court reviews whether the trial court abused its broad discretion. State v. Murdock, 416 So.2d 103 (La.1982); State v. Blackmon, 1999-391 (La.App. 3d Cir.11/03/99), 748 So.2d 50, writ denied, XXXX-XXXX (La.04/28/00), 760 So.2d 1174. Based upon what is in this record, and upon what is not in this record, we conclude that the trial court abused its discretion:
 by not ordering and considering a presentence investigation,
 by not considering the defendant's prior arrests and convictions, and
 by holding offerings at sentencing to the same high evidentiary standards required at trial.
Accordingly, we affirm the conviction, vacate the trial court's sentence, and remand this matter for resentencing, with the trial court being directed to order and thoroughly consider a presentence investigation before sentencing. The trial court is further directed to provide a full record of its reasons and justifications for the sentence finally imposed.

DECREE
CONVICTION AFFIRMED, SENTENCING VACATED, AND REMANDED WITH INSTRUCTIONS.
NOTES
[1] Particularly regarding prior criminal history relative to violations involving substance abuse.
[2] The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, reviewing the evidence in accord with Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), in the light most favorable to the prosecution, could not reasonably conclude that all of the elements of the offense have been proved beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Bosley, 29,253 (La.App. 2d Cir.04/02/97), 691 So.2d 347, writ denied, 97-1203 (La.10/17/97), 701 So.2d 1333. The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, supra. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Robertson, 96-1048 (La.10/04/96), 680 So.2d 1165.

The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of witnesses, the matter is one of the weight, not the sufficiency, of the evidence. State v. Allen, 36,180 (La.App. 2d Cir.09/18/02, 828 So.2d 622), writ denied, 02-2595 (La.03/28/03), 840 So.2d 566, 02-2997 (La.06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.08/30/02, 827 So.2d 508), writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
[3] Had the accident happened 135 days later, the defendant would have faced a mandatory minimum sentence of five years at hard labor, without benefits. In Act No. 750 of the 2004 Louisiana Legislative Session, the Louisiana Legislature amended La. R.S. 14:32.1(B) to include the following mandatory minimum sentencing requirements:

If the operator's blood alcohol concentration is 0.15 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence. If the offender was previously convicted of a violation of R.S. 14:98, then at least five years of the sentence of imprisonment shall be imposed without benefit of probation, parole, or suspension of sentence.