STEWART, J.
bThe defendant, Rashunda D. Dock, was charged by bill of information with two counts of vehicular homicide, a violation of La. R.S. 14:32.1. Following a jury trial, the defendant was found guilty as charged of two counts of vehicular homicide. She was sentenced to serve 10 years at hard labor, with the first three years to be served without the benefit of parole, probation, or suspension of sentence, for each count. The sentences were ordered to be served concurrently. The remainder of each sentence was suspended and she was given five years of supervised probation. The defendant filed a motion for a new trial and a motion for post-verdict judgment of acquittal, which were denied by the trial court. The defendant now appeals. For the reasons set forth in this opinion, we affirm the defendant’s convictions and sentences.
FACTS AND PROCEDURAL HISTORY
On April 11, 2009, at approximately 8:45 p.m., at the intersection of Broadway Avenue and Tate Street/Illinois Street, in Shreveport, Louisiana, the defendant crashed into the passenger side of a vehicle driven by Shirley Mourning. Two passengers in Mourning’s vehicle, two-year-old Tranita Thomas and 42-year-old Lash-anda Thomas, were killed.
On August 18, 2011, via amended bill of information, the defendant was charged with two counts of vehicular homicide, in violation of La. R.S. 14:32.1. The bill also charged Mourning with one count of negligent homicide. The defendant and Mourning were tried together.
The jury trial commenced on February 3, 2014. The following evidence was adduced at trial.
I? At the time of the accident, the defendant was operating a Chevrolet Trailblazer southbound on Broadway Avenue, a four-lane highway, with a posted speed limit of 35 miles per hour. Mourning was operating a Chrysler 300 westbound on Tate Street crossing Broadway Avenue. Tate Street is a two-lane road, with a posted speed limit of 25 miles per hour, which turns into Illinois Street once it crosses Broadway Avenue. A stop sign was located on Tate Street at the intersection with Broadway Avenue. In the middle of this *1100 intersection, the defendant’s vehicle collided with the passenger side of Mourning’s vehicle. The vehicles then traveled to the southwest quadrant of the intersection, off the roadway, coming to a stop side by side in front of a building. Mourning’s vehicle hit part of the building, causing damage.
Gabriel Morris, the passenger in the defendant’s vehicle at the time of the accident, testified that on the day of the accident, he went to the defendant’s house, where she was having a small family gathering. Morris stated that he brought two 32-ounce daiquiris to the defendant’s house, one for the defendant and one for himself. He witnessed the defendant take a couple of sips of her daiquiri before they decided to go purchase some crawfish for the children. The defendant operated the vehicle. On their way back home with the crawfish, Morris testified that the defendant received a phone call concerning something her sister’s boyfriend was doing to her son at her house. Morris stated that after the phone call, the defendant appeared mad and increased the speed of the vehicle. Approximately two minutes after the phone call, the accident occurred.
| aMorris further testified that he was unsure about whether Mourning stopped at the stop sign, or whether she did a rolling stop. He stated that it was not possible for the defendant to avoid the accident. Morris also stated that he did not have any reservations about riding the defendant, that the defendant did not appear intoxicated, and that he did not have any problem with the defendant’s driving until she started speeding.
Officer Wyatt Alexander of the Shreveport Police Department testified regarding his observations upon arriving at the accident scene. He determined Mourning to be at fault since she did not stop at the stop sign.
Officer Harry Brown of the Shreveport Police Department also testified about what he observed upon arriving at the accident scene. Brown’s photographs that he took at the scene, which the state introduced into evidence, depicted severe damage to the front of the defendant’s vehicle and the passenger side of Mourning’s vehicle. One of the photographs depicted a styrofoam cup, which appeared to be a daiquiri cup, on the driver’s side floorboard of the defendant’s vehicle. Brown also testified that no child restraint was found inside Mourning’s vehicle.
Sergeant William Vincent of the Shreveport Police Department, an expert in automobile crash reconstruction, testified regarding his investigation of the crash. Several days after the accident, he took daytime photos of the vehicles at central storage to better depict the damages. He also testified that no child restraint was found inside Mourning’s vehicle. Vincent took daytime photos of the accident scene, which depicted the defendant’s and Mourning’s viewpoint as they approached the intersection.
|4Vincent testified that based on his investigation, he was able to determine that three seconds prior to impact, the defendant was traveling 76 miles per hour. One second before impact, he determined that the defendant was traveling 56 miles per hour. At the point of impact, Mourning’s vehicle was traveling 25 miles per hour.
Vincent testified that if the defendant would have been traveling at a lower speed, the damage to Mourning’s vehicle would not have been as severe. He also determined that Mourning failed to stop at the stop sign on Tate Street before proceeding into the intersection. He stated that Mourning was at fault for the accident, because it would not have occurred had she stopped at the stop sign. Vincent also stated that even though the defen *1101 dant’s vehicle decreased speed prior to the crash, there were no pre-impact skid marks that would indicate she was braking.
The defendant testified that on the day of the accident, she drank a 12-ounce daiquiri before Morris arrived at her house. She further testified that she drank only two or three sips out the 32-ounce daiquiri that Morris brought her before they left her house to get the crawfish. Even though the defendant brought the daiquiri with her, she stated that she did not drink it while she was driving. The defendant testified that she did not feel intoxicated when she left her house, that she did not have any problems with her vision or navigating her vehicle, and that she was not distracted as she approached the intersection.
As she returned home, the defendant testified that she received a troubling text message from her niece informing her that something | ^inappropriate was going on at her house with her nine-year-old son. The defendant admitted that she sped up because she was trying to get home. However, she did not think she was going 76 miles per hour as alleged. As the defendant approached the intersection, she testified that she observed Mourning fail to stop at the stop sign. The defendant stated that she applied her brakes, but was unable to avoid the accident.
Mourning also testified, stating that her niece, Lashanda, her great-niece, Tranita, and her grandson, Marcus Thomas, were passengers in her vehicle. Mourning admitted that she did not put Tranita in a child restraint. She further testified that she did stop at a stop sign, but could not remember what happened because she was knocked unconscious.
Samuel Mack, an eyewitness to the accident, testified that he was walking south on Broadway Avenue, crossing Illinois Street, when he heard a loud skidding, like a car was braking. He then witnessed the vehicles crash and begin sliding toward him at a high rate of speed, at which time he ran.
Following the accident, at approximately 10:50 p.m., the defendant was transported to LSU Hospital where her blood was drawn to test for alcohol. Randall Robil-lard, an expert in blood alcohol analysis, and a chemist at the North Louisiana Crime lab, testified that the defendant’s blood contained 0.12 grams percent alcohol. Alcohol was not present in Mourning’s blood.
Jimmy Barnhill, an expert in the filed of forensic technology and the effects of alcohol on humans, testified that studies have shown that a person | flwith a blood concentration of 0.08 grams percent is sufficiently impaired to the extent that she cannot safely operate a motor vehicle.
Dr. James Taylor, an expert in forensic pathology, performed the autopsies on the victims, Tranita and Lashanda. He testified that both of them died from multiple blunt force injuries resulting from the accident.
On February 6, 2014, the jury unanimously found the defendant guilty as charged of two counts of vehicular homicide, in violation of La. R.S. 14:32.1. Mourning was also found guilty as charged of negligent homicide.
On February 19, 2014, the defendant filed a motion for a new trial and a motion for post-verdict judgment of acquittal. She argued that the state failed to sufficiently establish her blood alcohol concentration, combined with her operation of the vehicle, caused the death of the victims. At a hearing that took place on February 24, 2014, the defendant’s motions were denied.
*1102 On March 17, 2014, the trial court sentenced the defendant to 10 years at hard labor, with the first three years to be served without the benefit of parole, probation, or suspension of sentence on each count. The remainder of each sentence was suspended, and the defendant was given five years of supervised probation. The sentences were ordered to be served concurrently.
The defendant filed the instant appeal, asserting one assignment of error.
|7LAW AND DISCUSSION
In the defendant’s sole assignment of error, she asserts that the trial court erred in denying her post-trial motion for post-verdict judgment of acquittal because the state failed to prove beyond a reasonable doubt that her blood alcohol concentration, coupled with her operation of the vehicle, caused the death of the victims. The defendant notes that Officers Alexander and Vincent both testified that the accident would not have occurred if Mourning would have stopped at the stop sign.
La. C. Cr. P. art. 821 provides that a motion for post-verdict judgment of acquittal shall be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty. This is a question of legal sufficiency. State v. Combs, 600 So.2d 751 (La.App.2d Cir.1992), writ denied, 604 So.2d 973 (La.1992); State v. Watson, 39,362 (La.App.2d Cir.4/20/05), 900 So.2d 325. The accused may be entitled to an acquittal if a rational trier of fact, viewing the evidence in the light most favorable to the prosecution in accordance with Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979), could not reasonably conclude that all the essential elements of the offense have been proven beyond a reasonable doubt. State v. Hearold, 603 So.2d 731 (La.1992); State v. Nelson, 34,077 (La.App.2d Cir.12/6/00), 775 So.2d 579.
The Jackson standard for reviewing a sufficiency of the evidence claim is “whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential |selements of the crime beyond a reasonable doubt.” Jackson v. Virginia, supra; State v. Tate, 2001-1658 (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004). This standard, now legislatively embodied in La.C.Cr.P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La.2/22/06), 922 So.2d 517. It is not the function of a reviewing court to assess credibility or reweigh the evidence. State v. Marcantel, 2000-1629 (La.4/3/02), 815 So.2d 50.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of the evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by the evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Speed, 43,786 (La.App.2d Cir.1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La.11/6/09), 21 So.3d 299. Circumstantial evidence “must exclude every reasonable hypothesis of innocence” in order to support a conviction. La. R.S. 15:438. Ultimately, all evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard to support a *1103 conviction. State v. Jacobs, 504 So.2d 817 (La.1987); State v. Copes, 566 So.2d 652 (La.App. 2d Cir.1990).
The trier of fact is charged to make a credibility determination and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000); State v. Givens, 45,246 (La.App. 2 Cir.6/09/10), 41 So.3d 589. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Black, supra; State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 2007-1209 (La.12/14/07), 970 So.2d 529.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La.App.2d Cir.9/18/02), 828 So.2d 622, writs denied, 02-2595 (La.3/28/03), 840 So.2d 566, 02-2997 (La.6/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness’s testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Gullette, 43,032 (La.App.2d Cir.2/13/08), 975 So.2d 753; State v. Burd, 40,480 (La.App.2d Cir.1/27/06), 921 So.2d 219, writ denied, 2006-1083 (La.11/9/06), 941 So.2d 35.
|inLa. R.S. 14:32.1, vehicular homicide, provides in pertinent part:
A. Vehicular homicide is the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of convey-anee, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the following conditions exists and such conditions such condition was contributing factor to the killing:
[[Image here]]
(2) The operator’s blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
Under the vehicular homicide statute, the state, in order to convict, must prove that an offender’s unlawful blood alcohol concentration combined with his operation of a vehicle caused the death of a human being. State v. Taylor, 463 So.2d 1274 (La.1985). The state does not have to prove that the defendant’s intoxication was the sole cause of the accident; rather, the defendant’s intoxication need only be a contributing factor that led to the killing. State v. Beene, 49,612 (La.App.2d Cir.4/15/15), 164 So.3d 299, citing State in the Interest of R.V., 11-138 (La.App. 5th Cir.12/13/11), 82 So.3d 402.
The evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol. It is not aimed at persons involved in vehicular fatalities whose alcohol 'consumption does not cause but merely coincides with such an accident. Taylor, supra; State v. Gourdine, 41,469 (La.App.2d Cir.12/13/06), 946 So.2d 277. A vehicle operator with unlawful blood alcohol concentration could be involved in |nmany conceivable types of fatal accidents not caused in any way by his blood alcohol concentration. Taylor, supra. The punishment of persons who without fault and *1104 by coincidence fall in this latter class with the severe penalties intended for offenders whose alcohol consumption actually causes highway deaths is unnecessary to the legitimate purpose of the legislation and would constitute unwarranted statutory overkill. Id.
The vehicular homicide statute should be construed to require proof of a causal relationship between an operator’s unlawful blood-alcohol concentration and the death of the victim in order to convict. Taylor, supra. Causation is a question of fact to be considered in light of the totality of circumstances surrounding the ultimate harm and its relation to the prohibited conduct. State v. Kalathakis, 563 So.2d 228 (La.1990).
The testimony and evidence presented at trial, when viewed pursuant to the Jackson standard in the light most favorable to the prosecution, was sufficient to support the conviction of vehicular homicide. There was sufficient evidence to prove that the defendant’s unlawful blood alcohol concentration combined with her operation of a vehicle caused the death of two human beings.
The defendant admitted that she consumed a 12-ounce daiquiri, as well as two or three sips from a 32-ounce daiquiri. The state established that the defendant’s blood alcohol level was 0.08 percent or more at the time of the accident. Actually, the blood-alcohol analysis revealed that she had a blood alcohol concentration of 0.12 grams percent a couple of hours after the accident. Although Officers Alexander and Vincent testified that if |12Mourning would have stopped at the stop sign, the accident would not have occurred, there was evidence presented that the defendant was traveling at a high rate of speed, 76 miles per hour, three seconds before the crash. The posted speed limit was 35 miles per hour on that street.
Based on the evidence presented, it was reasonable for the jury to infer that the defendant’s intoxicated condition, coupled with her operating the vehicle at a high rate of speed, caused the deaths of the two victims. Therefore, this assignment of error is without merit.
In reviewing the record for error patent, we find the sentences to be illegally lenient. For the defendant’s convictions for vehicular homicide, the trial court failed to impose the mandatory fine of not less than $2,000.00 nor more than $15,000.00 pursuant to La. R.S. 14:32.1(B). The defendant is not prejudiced in any way by the trial court’s failure to impose the mandatory fine. An illegally lenient sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review. La. C.Cr.P. art. 882(A). This court, however, is not required to take such action. State v. Young, 46,575 (La.App.2d Cir.9/21/11), 73 So.3d 473, writ denied, 11-2304 (La.3/9/12), 84 So.3d 550; State v. Griffin, 41,946 (La.App.2d Cir.5/2/07), 956 So.2d 199. Since this court is not required to take action, the state has not objected to the error and the defendant is not prejudiced in any way by the failure to impose the mandatory fine, we decline to impose the fine. State v. Holmes, 48,535 (La.App.2d Cir.1/15/14), 130 So.3d 999.
11 sAdditionally, the state contends that the defendant’s sentence is illegal because pursuant to La. R.S. 14:32.1(D), the trial court was required to order the sentences to be served consecutively. However, the instant offense occurred on April 11, 2009, and at that time, La. R.S. 14:32.1 did not include a provision for the imposition of consecutive sentences. La. R.S. 14:32.1 was amended by Acts 2014, No. 372, effective May 30, 2014, to add subsection (D) which provides as follows:
*1105 Notwithstanding the provisions of Code of Criminal Procedure Article 883, if the offense for which the offender was convicted pursuant to the provisions of this Section proximately or directly causes the death of two or more human beings, the offender shall be sentenced separately for each victim, and such sentences shall run consecutively. In calculating the number of deaths for purposes of this Subsection, a human being includes an unborn child.
The law in effect at the time of the commission of the offense is determinative of the penalty which the convicted accused must suffer. A defendant must be sentenced according to the provisions in effect at the time of the commission of the offense. State v. Sugasti, 2001-3407 (La.6/21/02), 820 So.2d 518. The imposition of a harsher sentence than that prescribed at the time the offense was committed constitutes a violation of the ex post facto clauses of both the state and federal constitutions. State v. Taylor, 34,823 (La.App.2d Cir.7/11/01), 793 So.2d 367; State v. Moore, 37,046 (La.App.2d Cir.5/14/03), 847 So.2d 97.
Therefore, the trial court did not err in ordering the defendant’s sentences to be served concurrently. The defendant was sentenced in accordance with the senténc-ing provision in effect at the time of the commission of the offense.
^CONCLUSION
The defendant’s convictions and sentences are affirmed.
AFFIRMED.