PITMAN, J.
11 Defendant Yenel Louis-Juste was found guilty as charged of one count of vehicular homicide while under the influence of alcoholic beverages, a violation of La. R.S. 14:32.1. He was sentenced to 15 years at hard labor, the first 3 years without benefit of parole, probation or suspension of sentence; 8 years of the sentence was suspended; and Defendant was placed on 5 years’ active supervised probation upon his release. A motion to reconsider sentence was denied. Defendant appeals his conviction and sentence. For the following reasons, Defendant’s conviction and sentence are affirmed.

FACTS

At approximately 11:00 p.m. on June 22, 2013, the Franklin Parish Sheriffs Office was dispatched to a traffic accident on Highway 4, at the intersection of Henry Parker and R.E. King Roads, east of Winnsboro, Louisiana. A female driver who discovered the accident on her way home from babysitting called the sheriffs office to report it. When deputies arrived, they found an- 18-wheeler positioned across both lanes of the highway. The cab of the truck was located in the westbound lane while the trailer of the. truck extended across the entirety of the eastbound lane. Courtney Ezell, a 22-year-old mother of a small child, was driving a white Dodge pickup truck in the eastbound lane when it crashed into the trailer portion of the 18-wheeler. The impact propelled her truck underneath the trailer and crushed the front of the cab on the driver’s side. Deputies determined that Ms. Ezell was deceased.
^Deputies found Defendant, the driver of the 18-wheeler, standing close to the Dodge truck and questioned him about the accident.' Defendant’s first statement was that he was in the process of pulling out of R.E. King Road, heading west toward Winnsboro, when he was struck by the Dodge truck. After deputies detected the smell of alcohol on Defendant, he was detained and transported to the sheriffs office where Louisiana State Police troopers administered blood alcohol testing. Defendant’s blood alcohol concentration measured .111 grams percent, and he performed poorly on one field sobriety test. After Defendant was .informed of his rights, he admitted to drinking a beer at noon and then gave a statement which changed his original version of events. His second statement was that, at the time of the accident, he was traveling west and had attempted to back his truck down a side road when he was struck by the Dodge truck. State police issued a citation to him for improper backing in violation of La. R.S. 32:281 and vehicular homicide in violation of La. R.S. 14:32.1.
Defendant was originally charged by bill of information with vehicular homicide, which was later amended to include vehicular homicide while under the influence of alcoholic beverages. A two-day trial was held in June 2015 before a jury of six persons.
The following facts were gleaned from the testimony:
Wanda Booth, a resident of Winnsboro, testified that, on the evening of June 22, 2013, she had been babysitting her grandchildren on Highway 17 in Winnsboro while her daughter and son-in-law attended a wedding in Shreveport. She stated that they returned to their, home around 11:00 p.m. and she left immediately to go *311 home, using Highway 4. She was driving Uwith her window down and cautiously because she knew the road was a winding one. When she reached the Armstrong Subdivision, she began to smell something that smelled like brakes. She slowed from her speed of approximately 50 m.p.h. and observed some, lights in the roadway that were oddly angled and appeared to be heading into her lane of traffic. She stated that, at that point, she realized the lights belonged to a stationary truck. She could smell fuel and knew something was wrong. She testified that she stopped her car and a man walked toward her on the driver’s side and said to her, “This is just happening.” She asked him what had just happened and turned on the high beams of her car and realized that a wreck had occurred. She could see a white truck.
Ms. Booth further testified that the lights of the 18-wheeler were pointed toward her car and shining in her lane, but she did .not see the trailer of the vehicle because it was a very dark night. She stated that the trailer of the 18-wheeler was in the R.E. King Road, and the cab was angled so that the lights were pointing toward her as she was headed east. The 18-wheeler was across both lanes of traffic.
Ms. Booth asked the man if he had called for help, and he replied, “No, this has just happening, (sic) I can’t have this.” He kept repeating, “I can’t have this.” Ms. Booth called the sheriffs office, gave the dispatcher her name and phone number and told the person where she was and what she was observing. She stated that the man continued talking and told her that he heard the victim moaning, so she approached the Dodge truck. She stated that she could not even discern whether the victim was.a female, and she did 14not hear any moaning. She attempted to speak to the victim, but there was no response.
Ms. Booth also testified that she affirmed to the dispatcher, with whom she was still speaking, that there appeared to be only one person in the white truck. In the meanwhile, the man “disappeared” and a woman came out of the 18-wheeler. Ms. Booth asked her if anyone had called for help, but the woman did not answer and got back in the 18-wheeler. Ms. Booth identified Defendant as the man who was at the scene of the accident and to whom she had - spoken. She also stated that, when she spoke to him, he smelled of alcohol, and so .did his woman companion.
Ms, Booth was asked if it appeared the accident had just occurred when she arrived upon it. She said no, adding that she did not hear any metal cooling, no noises of glass falling or any clinking. The Franklin Parish Sheriffs Office responded to her call within ten minutes, and she asked the dispatcher if she could leave so she could return to her sick husband. She stated she had seen the victim and knew the seriousness of the accident and did not want to see any more. Pictures of the accident scene and a map of the area were entered into evidence.
Deputy Brandon Box of the Franklin Parish Sheriffs Office testified that he was on patrol on the night of June 22, 2013, when he was dispatched to an accident on Highway 4, east of Winnsboro, a short time after 11:00 p.m. He. was shown a photograph of the scene that had been introduced into evidence and was asked if it was. an accurate portrayal of the location and accident on Highway 4 when he arrived. He affirmed that it was and described the position of the 18-wheeler on the highway, pointing |Bout the only difference being that the ambulance was at the scene when the photograph was taken.
*312 Dep. Box further testified that, when he arrived on-scene, Defendant was standing close to the Dodge truck. He stated that he climbed on top of the Dodge truck to check the victim’s pulse and other vital signs, but she had none and appeared to be deceased. A photograph of the Dodge truck in relation to the trailer of the 18-wheeler was introduced. He further stated that other deputies, including Dep. Joshua Dunn, arrived on the scene and spoke to Defendant while he was checking on,the victim.
Dep. Box stated that he put Defendant and the woman with him into his patrol car and took them to the courthouse for their own safety. Neither of them was under arrest; he was simply removing them from the scene. He testified that it was a very short ride to the courthouse and that Defendant did not have anything to eat or drink during that time; however, he noted the smell of alcohol “on someone” in the car. He left them in the radio room in view of the dispatcher until the state police could arrive; he was dispatched to another accident. Both he and Dep. Dunn contributed to the incident report.
On cross-examination, Dep. Box confirmed that he had not performed any sobriety tests on Defendant or any further investigation into the matter, although he was aware that the accident had resulted in a fatality. On redirect examination, he stated that it was his impression that the Louisiana State Police would be conducting the investigation since a DWI was involved, that that was his office’s policy in such a situation, and that was the reason he did not conduct any field sobriety tests. He stated that his | (¡report contained the information that Defendant did not eat or drink anything while he was under his supervision so that the integrity of future tests would be preserved.
Dep. Joshua Dunn of the Franklin Parish Sheriffs Department testified that, on the night of the accident, he received a call shortly after 11:00 p.m. to respond to -a wreck on Highway 4 and that he arrived within a minute. He described the scene as had the other witnesses, explaining that he crawled into the bed of the Dodge truck and reached through the back window of the cab to check for the victim’s pulse. He stated that the victim’s seat had been pushed to the back of the truck’s cab, near the window. He identified Defendant as the driver of the 18-wheeler and as the person to whom he spoke at the scene of the accident.
Dep. Dunn also stated that Defendant told him that he had been pulling out of R.E. King Road when the Dodge truck “came flying by” and hit his trailer. He testified that he did not speak to Defendant any further, but he found Dep. Box and told him he could smell an odor of alcoholic beverage coming from Defendant’s person. He stated that Defendant was transported to the sheriffs office by Dep. Box, but was not placed under arrest at that time.
Dep. Dunn further testified that the portion of the highway at the point of the accident is a straightaway and that the speed limit is 55 m.p.h. He was shown a Google map of the accident site, and he noted that no curve appeared on the map, but that a curve preceded the area approximately a quarter of a mile from the location of the accident. He testified that R.E. [7King Road and Henry Parker Road are not paved or gravel roads and not roads from which a person might expect an 18-wheeler to emerge.
Paramedic Janice Posey testified' that she was called to the accident scene around 11:25 p.m. in her capacity as deputy coroner for the Franklin Parish Coroner’s Office. When she arrived, she saw *313 the driver’s side of the Dodge truck underneath the back section of the 18-wheeler. She was able to enter the truck from the passenger’s side, which was not under the 18-wheeler. She observed the victim and pronounced her deceased at the scene.
Tpr. Jason Hanemann of the Louisiana State Police testified that he worked in the Troop F area of the state and was charged with the responsibility of investigating and arresting alcohol-related offenders. He stated that he was dispatched to the accident in Franklin Parish and was informed that it involved a fatality. He further stated that he had been notified to perform an administrative Intoxilyzer test on Defendant, who was at the Franklin Parish Sheriffs Office. He identified Defendant as the person waiting at the courthouse, and he transported him to the Detention Center where the Intoxilyzer test machine is located.
Tpr. Hanemann identified Defendant’s signed voluntary submission to a chemical test form (intoxication not suspected), which explains the law and gives him the authority to administer Intoxilyzer or blood tests (the standard testing procedure for intoxication) when a fatality has occurred. He also identified copies of his certification cards identifying him as a cer: tified operator of the Intoxilyzer 5000 on June 22, 2013.
|RTpr. Hanemann further testified that Defendant did not have anything to eat or drink while he was in transport. He also checked the back seat of his vehicle both before and after transport to make sure no evidence was left there. He verified that the particular machine he used to obtain Defendant’s blood alcohol level was in proper working order before he gave the test and that a reading of .000 grams showed there were no leftover results in the machine. He placed a clean mouthpiece on the machine, and Defendant blew into it. The machine' printed out a card reflecting Defendant’s' blood alcohol level was .111 grams percent. He stated that Defendant “was significantly over the legal limit which was point zero eight.” He also stated that, under Title 32 of the Louisiana Revised Statutes dealing with traffic codes and violations, there is no acceptable amount of alcohol allowed for an operator of a commercial motor vehicle.
Tpr. Hanemann also testified that, after the test was completed, he advised Defendant of his rights. Defendant continued to speak with him and informed him that he had one 24-ounce Bud Light beer at noon that day. He administered field sobriety tests at that point, including the Horizontal Gaze and Nystagmus tests. Defendant exhibited jerking in both eyes and scored a six out of six clues, all of which indicated impairment. He stated that Defendant’s eyes were red and watery, but that he performed “fairly well” on the walk and turn and one-leg stand field sobriety tests.
Tpr. Hanemann further testified that Defendant described the accident to him, stating that he was headed west, realized that he had missed a turn and that he was backing up into a side street when he was struck by the |fleastbound Dodge truck. Defendant refused to give a written statement and requested a lawyer.
On cross-examination, Tpr. Hanemann confirmed that the different types of tests performed on Defendant were not infallible. He stated that there is “no one hundred percent [test] for the entire population” and that he is trained to keep in mind that the physiology of individuals is different and alcohol can affect different people in different ways. He also stated that he did not administer a blood test to Defendant because the Intoxilyzer 5000 machine proved impairment. Given the margin of error in the machine of “plus or *314 minus” .01 percent, Defendant was significantly over the legal limit.
■Tpr. Stephen Bradley Spainhower of the Louisiana State Police was dispatched to the accident scene and began the investigation since Louisiana State Police are charged with the enforcement of criminal statutes regarding traffic on Louisiana public roads. In his testimony, he identified photographs of the scene and described the location and placement of the 18-wheeler and the Dodge truck. He agreed with the earlier witnesses’ assessment of the scene and that the cab of the 18-wheeler was slightly off the road in the westbound lane of travel and that the trailer extended across the eastbound lane, blocking it entirely. He testified that the trailer had reflector lights, but that any illumination of those lights would have been diminished because they are designed to direct light straight back at the light shining on them. All of the photographs were admitted into evidence. He testified that, based on the investigation and the fact that he did not see any marks that would indicate that the 18-wheeler was pulling forward, he | inassumed that it was “either backing or stopping.” He stated that he issued a traffic citation to Defendant for improper backing and vehicular homicide.
On cross-examination, Tpr. Spainhower admitted that he did not perform any sort of accident reconstruction and never spoke to Defendant. He did measure the distance between the curve in the' road and the- straightaway where the accident occurred arid foúnd it to be approximately one quarter of a mile. ' He stated that there were no obstructions. He also testified that there were no skid marks which would have indicated that the victim had braked to avoid the accident.
Vicki Ezell, the victim’s mother, identified the truck owned by her and driven by her daughter. She identified a photograph of her daughter. The state rested and. the defense put on no evidence.
Defendant was found guilty as charged.
A presentence investigation report was ordered. At the sentencing hearing, the trial court noted its consideration of two PSI reports and letters from, members of both families involved in the case. It noted that the PSI reports indicated Defendant’s age and the charges arising from the present offense, highlighting the use of alcoholic beverages and blood alcohol concentration. It also reviewed the facts of the case, noting Defendant’s blood alcohol concentration of .111 percent. It further noted that Defendant had expressed regret to the victim’s family, but asserted that he was not the cause of the victim’s death. It considered Defendant’s status as a father of five children and the hardship his incarceration would place on them and his wife since he was the main source of income for the family.
|nThe trial court further considered Defendant’s criminal record, noting that he had various traffic violations, including speeding, three different convictions for driving under suspension and two for no proof of insurance, as well as seat belt and open container violations.[1] Defendant also had a felony conviction for uttering, i.e., forgery, in Mississippi and received a three-year sentence at hard labor, which was suspended. For that offense, Defendant was placed on active supervised probation, from which he was discharged on June 7, 2009. Defendant was arrested in May 2012 for a domestic violence incident involving his wife; he pled guilty, paid a fine and court costs and was placed on unsupervised probation and ordered to *315 complete anger management treatment. Defendant’s.last conviction was the offense at issue in this case.
Having considered the two PSIs and the letters, .the trial court listed aggravating factors it noted when pronouncing Defendant’s sentence. The blood alcohol level was .111 percent at the time of testing “sometime after the accident.” Defendant’s admission of the amount and/or time of his consumption of alcohol was difficult to- believe. As a commercial truck driver, Defendant should not have consumed any alcoholic beverages prior to or while operating a large and potentially dangerous vehicle, which behavior the trial court found to be grossly negligent and inexcusable. Defendant presented a hazardous condition for oncoming traffic. The offense resulted in the death of the victim, which caused significant 112economic hardship to her family, who now has to support her child. Last, the trial court considered Defendant’s criminal record to be a factor.
The trial court sentenced Defendant to 15 years at hard labor, the first 3 years without benefit of parole, probation or suspension of sentence. It suspended 8 years of the sentence and placed Defendant on 5 years’ active supervised probation upon his release. As part of his sentence, the trial court ordered Defendant to undergo an evaluation for substance abuse and appropriate treatment if needed. As a special condition of probation, Defendant was ordered to pay a fine of $2,000 plus court costs within 2 years of his release. Defendant filed a timely motion to reconsider sentence, which was denied. He appeals the sufficiency of the evidence of his conviction and the constitutionality of his sentence.

DISCUSSION

Sufficiency of the Evidence

. Defendant contends the evidence presented at trial was insufficient to convict him of vehicular homicide because the state failed to prove beyond a reasonable doubt that his intoxication, combined with his operation of a vehicle, caused the victim’s death. He argues that, while there was evidence that his driving was a causal factor of the accident, the state failed to prove that it was the use of alcohol that caused his poor driving and was causally related to the death. Specifically, he argues that the state presented no evidence that his driving was erratic or impaired by alcohol at the time of the accident. He contends that he traveled at an apparently safe and reasonable speed. While- his blood alcohol measured above the legal limit, he argues that there was no evidence that he slurred his words, was incoherent, swayed |13or was unsteady on his feet. Further, he contends that the state presented no evidence about other potential causes for the accident, including the victim’s use of a cell phone, drugs or alcohol.
The state argues .that, based on the evidence presented, it was reasonable for the jury to conclude that Defendant’s intoxication affected his decision-making ability and that, combined with his actions in illegally backing into and obstructing a two-lane highway, was a substantia] and contributing cause of the victim’s death. It further argues that Defendant’s blood alcohol level was higher than the legal limit and that further proof of his intoxication was his failure to call for help, his agitation and anger and the smell of alcohol about his person. Also, he performed poorly on the Horizontal Gaze and Nystagmus field sobriety tests. It contends that there was no evidence that the victim was negligent in any way; but that, even if she had been negligent, that would not have negated a finding of criminal wrongdoing by Defendant. It argues that, from the evidence presented, it was within the jury’s discre *316 tion to determine that Defendant’s drinking caused his poor driving and the resulting death of the victim, rather than simply Defendant’s driving alone.
The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. On appeal, a reviewing court must view the evidence in the light most favorable to the state and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Little, 49,978 (La.App.2d Cir.8/12/15), 174 So.3d 1219.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An áppellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Little, supra.
The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442; State v. Little, supra. A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Eason, 43,788 (La.App.2d Cir.2/25/09), 3 So.3d 685, writ denied, 09-0725 (La.12/11/09), 23 So.3d 913, cert. denied, 561 U.S. 1013, 130 S.Ct. 3472, 177 L.Ed.2d 1068 (2010); State v. Hill, 42,025 (La.App.2d Cir.5/9/07), 956 So.2d 758, writ denied, 07-1209 (La.12/14/07), 970 So.2d 529.
As applicable to this case, the crime of vehicular homicide, set forth in La. R.S. 14:32.1(A), is defined as:
the killing of a human being caused proximately or caused directly by an offender engaged in the operation of, or in actual physical control of, any motor vehicle, aircraft, watercraft, or other means of conveyance, whether or not the offender had the intent to cause death or great bodily harm, whenever any of the 11fifollowing conditions exist and such condition was a contributing factor to the killing:
[[Image here]]
(2) The operator’s blood alcohol concentration is 0.08 percent or more by weight based upon grams of alcohol per one hundred cubic centimeters of blood.
[[Image here]]
(4) The operator is under the influence of alcoholic beverages.
Under the vehicular homicide statute, the state, in order to convict, must prove that an offender’s unlawful blood alcohol concentration, combined with his operation of a vehicle, caused the death of a human being. State v. Taylor, 463 So.2d 1274 (La.1985); State v. Dock, 49,784 (La.App.2d Cir.6/3/15), 167 So.3d 1097. The state does not have to prove that the defendant’s intoxication was the sole cause of the accident; rather, the defendant’s intoxication need only be a contributing factor that led to the killing. State v. Dock, supra; State v. Beene, 49,612 (La.App.2d Cir.4/15/15), 164 So.3d 299, writ denied, 15-0944 (La.4/4/16), 190 So.3d 1200; State v. Gourdine, 41,469 (La.App.2d Cir.12/13/06), 946 So.2d 277. The “substantial factor” and “proximate cause of *317 death” standards are used interchangeably by the courts and are sufficient to satisfy the causality requirements. State v. Gourdine, supra. Specifically, the vehicular homicide statute should be construed to require proof of a causal relationship between an operator’s unlawful blood-alcohol concentration and the death of the victim in order to convict. State v. Dock, supra.
The evident purpose of the vehicular homicide statute is to curb traffic fatalities caused by the consumption of alcohol. It is not aimed at persons |1fiinvolved in vehicular fatalities whose alcohol consumption does not cause, but merely coincides with, such an accident. State v. Taylor, supra; State v. Dock, supra. A vehicle operator with unlawful blood alcohol concentration could be involved in many conceivable types of fatal accidents not caused in any way by his blood alcohol concentration. State v. Dock, supra. The punishment of persons who without fault and by coincidence fall in this latter class with the severe penalties intended for offenders whose alcohol consumption actually causes highway deaths is unnecessary to the legitimate purpose of the legislation and would constitute unwarranted statutory overkill. Id.
Causation is a question of fact to be considered in light of the totality of circumstances surrounding the ultimate harm and its relation to the prohibited conduct. State v. Kalathakis, 563 So.2d 228 (La.1990); State v. Dock, supra; State v. Beene, supra.
The evidence presented at trial, when viewed in the light most favorable to the state, was sufficient to support Defendant’s conviction for vehicular homicide while under the influence of alcoholic beverages. The direct evidence presented by the state established Defendant’s blood alcohol level to be .111 percent, well over the legal limit. Defendant performed poorly on one of the field sobriety tests and smelled of alcohol. He admitted that he was the driver of the 18-wheeler at the time of the accident. He failed to notify authorities of the accident and acted strangely at the accident site.
The photographic evidence established that the 18-wheeler was illegally blocking the eastbound lane of travel at the time of the accident, regardless of whether Defendant was pulling out from or backing into the|17side road. The conditions were dark such that even an attentive unsuspecting driver could have been unaware of the obstruction on the highway, even with the clear weather conditions. The lack of warning markers and diminished capacity of the standardized truck reflectors gave no additional warning to the victim, even on the straight highway. The lack of braking skid marks indicates that the victim did not see the 18-wheeler. No evidence established negligence on her part in the accident; but, even if it had, Defendant’s intoxicated state could still be found to be a contributing factor that led to her death. The facts show that, while he was intoxicated, Defendant positioned his 18-wheeler into the path of oncoming traffic at approximately 11:00 p.m. on a very dark evening.
When viewed in the light most favorable to the state, the evidence was sufficient for a reasonable fact finder to conclude beyond a reasonable doubt that Defendant’s impairment due to high blood alcohol concentration dulled his thought processes and affected his decision-making to a degree sufficient to be a contributing cause of the victim’s death. For these reasons, this assignment of error is without merit.

Constitutionality of the Sentence

Defendant argues that the trial court imposed an unconstitutionally excessive sentence in violation of La. Const. Art. I, *318 § 20,. which prohibits the subjection of any person to cruel, excessive or unusual punishment.[2] He lisalso argues that he was 38[3] years old at the time of the sentencing, employed, married and the father of five children. He contends that his incarceration will impose an undue hardship on his family.
The state argues that the harm caused by Defendant, his status as a second offender and lack of remorse support the imposition of the sentence in this case. The state points out that the trial court determined that Defendant was not completely truthful about when and how much he drank and that it was troubled by his prior open container violation, which he denied. Considering the facts of this case and Defendant’s personal and criminal history, the state argues that the sentence should be affirmed.
To constitute an excessive sentence, a court must find that the penalty is so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no reasonable contribution to acceptable penal goals and, therefore, is nothing more than the needless imposition of pain and suffering. State v. Griffin, 14-1214 and 14-1238 (La.10/14/15), 180 So.3d 1262; State v. Guzman, 99-1528 and 99-1753 (La.5/16/00), 769 So.2d 1158. The trial court has wide discretion in the imposition of sentences within the statutory limits. Thus, the sentence imposed will not be set aside as excessive absent a manifest abuse of that discretion. State v. Baker, 49,841 (La.App.2d Cir.5/20/15), 166 So.3d 1152, writ denied, 15-1219 (La.3/4/16), 185 So.3d 745. On review, an appellate court does not determine whether another sentence may have been |1flmore appropriate, but whether the trial court abused its discretion. Id.; State v. Free, 46,894 (La.App.2d Cir.1/25/12), 86 So.3d 29.
A sentence may violate a defendant’s constitutional right against excessive punishment even if it is within the statutory limit. State v. Nealon, 50,089 (La.App.2d Cir.9/30/15), 179 So.3d 661. To determine whether a particular sentence is excessive, this court must decide whether it is so disproportionate to the severity of the crime as to shock the sense of justice. Id.
For his conviction for vehicular homicide, Defendant faced the following sentencing exposure under La. R.S. 14:32.1:
B. Whoever commits the crime of vehicular homicide shall be fined not less than two thousand dollars nor more than fifteen thousand dollars and shall be imprisoned with or without hard labor for not less than five years nor more than thirty years. At least three years of the sentence of imprisonment shall be imposed without benefit of, probation, parole, or suspension of sentence [.] The court shall require the offender to participate in a court-approved substance abuse program and may require the offender to participate in a court-approved driver improvement program. All driver improvement courses required under this Section shall include instruction on railroad grade crossing safety.
Our review of the record demonstrates the imposed sentence to be adequately tailored to Defendant- and the *319 circumstances of the crime. For the vehicular homicide, Defendant faced potential sentencing exposure of 30 years. Thus, the imposed sentence was one-half of the potential maximum sentence. Defendant received substantial leniency through the suspension of over one-half of that sentence, and we note that the fine was imposed as a condition of probation rather than as part of his sentence in accordance with La. R.S. 14:32.1(B).
12nThe circumstances of this case concern the death of a young woman due to Defendant’s actions in driving an 18-wheeler while intoxicated. It was Defendant’s second felony, and he had a prior contested conviction for an open container violation. Defendant lied about his drinking prior to the accident and denied being the cause of the victim’s death. Even considering the mitigating factors involved and the hardships his incarceration will cause to his family, the fact remains that a young woman lost her life, and a young child his mother, as a result of Defendant’s reckless actions.
Considering the seriousness of the offense and the consequences of Defendant’s actions, the imposed sentence does not shock the sense of justice, nor is it disproportionate to the severity of the offense. For these reasons, this assignment of error is without merit.

CONCLUSION

For the foregoing reasons, the conviction and sentence of Defendant Venel Louis-Juste are affirmed.
AFFIRMED.

. The PSI report indicates Defendant had . four convictions for driving under suspension. Defendant told the trial court he did not remember the open container violation.

. While review of sentences for excessiveness is two-pronged, Defendant has raised no issue with the trial court's compliance with La. C. Cr. P. art. 894.1, instead arguing error only regarding the second prong, constitutional ex-cessiveness. Accordingly, our review is limited to the issues raised. Nevertheless, we find adequate La. C. Cr. P. art. 894.1 compliance.

. The record shows that Defendant was actually 38 years old at the time of sentencing.